# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Wilmington Trust, N.A., as Trustee of ARLP Securitization Trust, Series 2014-2,

    Plaintiff

v.

Saticoy Bay LLC Series 206 Valerian; Cinnamon Ridge Community Association; and Nevada Association Services, Inc.,

    Defendants

ALL OTHER PARTIES AND CLAIMS

Case No. 2:17-cv-00460-JAD-NJK

**Order Granting in Part and Denying in Part Motions for Summary Judgment and to Dismiss**

[ECF Nos. 35, 39, 49, 50, 52]

    Wilmington Trust, N. A. brings this action to challenge the effect of the 2014 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] Wilmington sues the Cinnamon Ridge Community Association (the HOA), which conducted the foreclosure sale, and foreclosure-sale purchaser Saticoy Bay, LLC Series 206 Valerian, primarily seeking a declaration that the sale was invalid or that Saticoy Bay purchased the property subject to Wilmington's security interest.[2] Saticoy Bay and the HOA move to dismiss Wilmington's claims, and all parties cross-move for summary judgment on various claims.[3]

---

[1] ECF No. 1.

[2] Wilmington also sued the HOA's agent, Nevada Association Services, Inc. (NAS), but NAS failed to respond and the Clerk of Court entered default against it. *See* ECF No. 48.

[3] I find these motions suitable for disposition without oral argument. L.R. 78-1.

Because Wilmington has demonstrated that the original homeowner paid all outstanding assessments, thereby satisfying the full superpriority piece of the HOA's lien before the foreclosure sale, I find that the foreclosure sale did not involve a superpriority component that could have extinguished the deed of trust. So, I grant partial summary judgment in Wilmington's favor on the quiet-title claims and dismiss its remaining quiet-title theories as moot. I grant the HOA's motion to dismiss Wilmington's claims for negligence, negligence per se, and misrepresentation, but I deny the motions in all other respects. This case thus proceeds on Wilmington's unjust-enrichment claim against Saticoy Bay and the HOA, and on Wilmington's claims against the HOA for breach of contract and breach of the implied covenant of good faith and fair dealing, and I order the parties to a settlement conference with the magistrate judge.

**Background**

Daniel A. Acosta purchased the home at 206 Valerian Street in Henderson, Nevada, in 2007 with a $435,600 loan from EquiFirst Corporation, secured by a deed of trust.[4] After two assignments, Wilmington now holds that deed of trust.[5] The home is located in the Cinnamon Ridge planned-unit development and subject to the governing documents for its homeowners' association.[6]

The Nevada Legislature gave homeowners' associations a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the

---

[4] ECF No. 31-2 (deed of trust).
[5] ECF No. 31-3; 31-4.
[6] ECF No. 31-2 at 21 (PUD rider).

Nevada Revised Statutes a non-judicial foreclosure procedure for them to enforce that lien.[7] When the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 by recording a notice of delinquent assessment lien on March 19, 2012.[8] The notice stated that the "TOTAL delinquent assessments through" that date were "the amount of $881.69," which "include[d] attorney's fees (if any), late fees, collection fees[,] and interest in the amount of $673.98."[9] The HOA followed that up with a notice of default and election to sell under homeowners association lien, recorded on May 17, 2012.[10]

The HOA ultimately foreclosed on the home more than two years later on August 1, 2014.[11] But more than a year before that, on April 30, 2013, the homeowner paid the HOA $536.14. The HOA applied that payment to the outstanding monthly assessment balance. The HOA's FRCP 30(b)(6) representative, Sharon Taylor Bergeron, testified at her deposition that Acosta's payment "cured all of the assessments before that May 17, 2012, recorded date."[12]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*") in 2014, because NRS 116.3116(2) gives an HOA "a true superiority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will

---

[7] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

[8] ECF Nos. 31-5 (notice of delinquent assessment lien).

[9] *Id*. at 2.

[10] ECF No. 31-6 at 2.

[11] ECF No. 31-8 at 2 (foreclosure deed, recorded on August 5, 2014). I take judicial notice of the recorded documents.

[12] ECF No. 49-1 at 19:4–11.

3

extinguish a first deed of trust."[13]  But the court also explained that an HOA's lien has two parts—superpriority and subpriority—and in cases since *SFR I*, the Nevada Supreme Court has held that satisfaction of the superpriority portion of the lien before the foreclosure sale will save the first deed of trust from extinguishment.

Wilmington filed this suit against Saticoy Bay in February 2017[14] but amended to add claims against the HOA in January of this year.  In its amended complaint, Wilmington pleads eleven claims: five for quiet title,[15] and individual claims for unjust enrichment, negligence, negligence per se, breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation.  Saticoy Bay counterclaims for quiet title.[16]  The parties' quiet-title claims are the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[17]  Wilmington's quiet-title claims (and defenses to Saticoy's counterclaims) are grounded in a handful of theories including that the statutory scheme violated due process, the superpriority portion of the lien had been satisfied, and the sale was not commercially reasonable or was otherwise wrongfully conducted.[18]

---

[13] *SFR I*, 334 P.3d at 419.

[14] ECF No. 1.

[15] ECF No. 31 (amended complaint).  Although these first, second, third, fourth, and sixth causes of action have various titles, including declaratory relief, injunctive relief, and wrongful foreclosure, all seek basically the same relief: a determination that the foreclosure sale was defective and should be set aside, or that it did not extinguish the deed of trust.

[16] ECF No. 34 (Saticoy Bay's counterclaim).

[17] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[18] *See generally* ECF Nos. 31, 58.

Discovery has closed,[19] and Wilmington moves for summary judgment on the quiet-title claims, arguing that the homeowner's payment satisfied the superpriority portion of the HOA's lien, so the foreclosure sale could not have extinguished its deed of trust.[20] The HOA moves to dismiss and for summary judgment, contending that Wilmington's claims are barred by applicable statutes of limitations or the doctrine of laches, and that its quiet-title theories fail for a handful of other reasons.[21] Saticoy Bay also moves to dismiss and for summary judgment, offering the same slate of boilerplate arguments that it has made in the scores of nearly identical cases like this one pending in this district. I consider each party's positions in turn.

## Discussion

**A.    Standards for crossmotions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[22] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[23] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[24]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it

---

[19] ECF No. 44.
[20] ECF No. 49.
[21] ECF Nos. 39, 50.
[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[23] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).
[24] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

5

must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[25] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[26] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[27] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[28]

**B.     Wilmington is entitled to partial summary judgment because the homeowner's tender of the superpriority amount cured the default and satisfied the lien, saving the deed of trust from extinguishment.**

Wilmington argues that homeowner Acosta's April 30, 2013, $536.14 payment cured all unpaid assessments and satisfied the entire superpriority portion of the HOA's lien. So, when the HOA ultimately foreclosed, the only thing it could have foreclosed on was a subpriority lien, which had no effect on the deed of trust. Saticoy Bay argues that only the lender can satisfy the superpriority piece of an HOA lien with a partial payment.[29] It reasons that the super/sub-

---

[25] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[26] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

[27] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[28] *Celotex*, 477 U.S. at 322.

[29] ECF No. 55 at 5.

6

priority dichotomy is "a specially devised mechanism designed to strike an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interest of lenders."[30] It further suggests that "to allow" lenders "to benefit from homeowner payments, while" sitting on their hands "would fly in the face of" the goal of an "equitable sharing of the costs of preserving the value of the mortgagee's security."[31]

### 1. *A homeowner's tender of the full superpriority amount, when applied to the charges that comprise the superpriority amount, discharges that portion of the lien and saves the deed of trust.*

Saticoy Bay's fairness concern about making the lender feel the pain of payment before earning the reward of deed-of-trust preservation ignores how these HOA liens work. "NRS 116.3116(1) gives an HOA a lien on its homeowners' residences" for "any assessment levied against that unit or any fines imposed against the unit's owner . . . ."[32] NRS 116.3116(2) "elevates the priority of th[at] HOA lien over other liens" by making these liens "prior to all other liens and encumbrances" except for first deeds of trust recorded before the assessments became delinquent.[33] "If subsection 2 ended there, a first deed of trust would have complete priority over an HOA lien. But it goes on to carve out a partial exception" to that exclusion by making the lien "prior to all security interests . . . to the extent of any maintenance and nuisance-abatement charges incurred by the association on" the unit and nine months' worth of HOA

---

[30] *Id.* (quoting *SFR I*, 334 P.3d at 412).
[31] *Id.* at 9.
[32] *SFR I*, 334 P.3d at 410 (citing Nev. Rev. Stat. § 116.3116(1)).
[33] *Id.*

7

dues.[34] That nine-months-of-assessments-plus-maintenance-and-nuisance-abatement-charges portion of the lien is the superpriorty piece, and its foreclosure extinguishes a first deed of trust.[35]

Because liens are essentially debt security, they may be "lost by payment or tender of the proper amount of the debt secured by the lien."[36] The Nevada Supreme Court has held that satisfaction of the full superpriority portion of the lien will preserve a deed of trust. In *Bank of America, N.A. v. SFR Investments Pool 1, LLC* (*"Diamond Spur"*), the Court explained that such a tender "cure[s] the default and prevent[s] foreclosure as to the superiority portion of the HOA's lien by operation of law."[37] "Thus, under th[is] split-lien scheme, tender of the superpriority portion of an HOA lien satisfies that portion of the lien by operation of law." And when an HOA forecloses on the entire lien post-tender, the sale is "void as to the superpriority portion" because the tender "cured the default as to the superpriority portion of the HOA's lien."[38]

Although the *Diamond Spur* court evaluated such a tender on behalf of the lender, the Nevada Supreme Court held that a homeowner's tender of the superpriority piece saved the deed of trust from extinguishment in its unpublished disposition in *Saticoy Bay LLC Series 2141 Golden Hill v. JPMorgan Chase Bank*.[39] The Court found that the district court properly granted summary judgment in favor of the bank because the record "contain[ed] undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component of

---

[34] *Id.*

[35] *Id.* at 409–11.

[36] *Bank of America, N.A. v. SFR Investments Pool 1, LLC* (*"Diamond Spur"*), 427 P.3d 113, 117 (Nev. 2018) (quoting *Power Transmission Equip. Corp. v. Beloit Corp.*, 201 N.W.2d 13, 16 (Wis. 1972)).

[37] *Id.* at 120.

[38] *Id.* at 121.

[39] *Saticoy Bay LLC Series 2141 Golden Hill v. JPMorgan Chase Bank*, 2017 WL 6597154 (Nev. Dec. 22, 2017) (unpub.).

8

the HOA's lien and that the HOA applied those payments to the superpriority component of the former homeowners' outstanding balance."[40] So, "at the time of the foreclosure sale, there was no superpriority component of the HOA's lien that could have extinguished [the] deed of trust."[41]

These tender cases demonstrate that it is the legal effect of the payment, not the identity of the payor, that matters. If the HOA has accepted payment and applied it to pay off the pre-notice-of-lien assessments and all maintenance or nuisance-abatement charges, the superpriority portion of the lien is discharged, and the foreclosure sale can only be on the subpriority piece. And because the subpriority portion of the HOA's lien stands behind the deed of trust in the priority line, that foreclosure cannot extinguish the deed of trust.

Saticoy Bay points out that the Nevada Supreme Court noted in a footnote in another unpublished case, *SFR v. Wells Fargo Bank*, that the *Golden Hill* court merely assumed without deciding that a homeowner payment can cure the superpriority default, so this court should put no stock in *Golden Hill*.[42] But that assumption was foundational to the *Golden Hill* Court's affirmation of the district court's grant of summary judgment in favor of the bank. So, I find that *Golden Hill*—in conjunction with the scores of cases in which the Nevada Supreme Court has found that tender of the superpriority amount by a bank, its loan servicer, or its attorney operates to discharge the lien and preserves the deed of trust—indicates that a homeowner tender of the full superpriority amount, when actually applied to the charges that comprise the superpriority

---

[40] *Id.* at *1.

[41] *Id.*

[42] ECF No. 55 at 11 (quoting *SFR Invs. Pool 1, LLC v. Wells Fargo Bank, N.A.*, 2018 WL 6609670 (Nev. Dec. 13, 2018) (unpub.)).

9

amount, will likewise discharge that portion of the lien and save the deed of trust from extinguishment under Nevada law.

### 2. *Acosta's payment discharged the superpriority portion of the lien, saving Wilmington's deed of trust from extinguishment.*

The record in this case establishes without genuine dispute that homeowner Acosta's payment wiped out the full superpriority portion of the HOA's lien. Although the Resident Delinquency Detail for this property does not provide a running balance for the account, it does reflect several undisputed facts: the HOA dues on this property were $54 per quarter, the homeowner made a $536.14 payment on April 30, 2013, and there were no maintenance or nuisance-abatement charges on this property.[43] The lack of a rolling balance makes it difficult to tell from this detail sheet alone what impact the $536.14 payment had.[44] The deposition testimony of Sharon Taylor Bergeron, the FRCP 30(b)(6) representative of the HOA, provides the interpretation necessary to understand what happened to that payment, however. She testified that it was the HOA's practice to apply homeowner payments "to the oldest assessments first, and the oldest late fees,"[45] and that is why the detail shows a zero balance for all charges before the April 30, 2013, payment. As Bergeron explained, "this is not a rolling balance ledger, this is a transaction applied ledger"; it shows a zero balance "because monies have already been

---

[43] ECF No. 49-2. That document was accompanied by a certificate of custodian of records that demonstrates that Wilmington could present this accounting document as admissible evidence at trial. The 2010 amendment to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment. *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished). Instead, the rule mandates that the substance of the proffered evidence be admissible at trial. *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

[44] ECF No. 49-1 at 13.

[45] *Id.* at 17, l. 23–25.

applied to it."[46]  Bergeron summed up the information on the detail sheet with her final deposition answer:

> Q: . . . The notice of default was recorded on May 17th, 2012. . . this payment . . . would have cured all of the assessments before that May 17, 2012[,] recorded date, correct?
>
> A: Correct.[47]

Bergeron's testimony establishes that the HOA applied the homeowners' payment to all of the HOA dues that were outstanding before the HOA commenced its action to enforce the lien. And because there is no evidence that maintenance or nuisance-abatement charges were imposed on this property, the record establishes without genuine dispute that no amounts qualifying as superpriority under Nevada law remained at the time of the foreclosure sale.[48]

Saticoy Bay contends that the HOA couldn't have applied Acosta's payment to the superpriority amount "because the HOA did not believe that a super priority lien existed."[49] It cites the deposition testimony of Susan Moses, an employee of the HOA's agent NAS, for this proposition. But Moses merely testified that she did not know whether NAS had "a specific policy on what the super-priority lien was" in the 2012–14 timeframe.[50] Plus, it didn't matter what the HOA or NAS subjectively believed was a superpriority-lien charge. Bergeron did not

---

[46] *Id.* at 13.

[47] *Id.* at 19, l. 4–11.

[48] Although additional charges continued to accrue, and the account balance had climbed to $341.36 leading up to the foreclosure sale, *see* ECF No. 49-2 at 5, there is no evidence that the HOA sent another lien notice out after the March 2012 notice of delinquent assessment lien. As the Court noted in *Golden Hill*, such "new unpaid monthly assessments could not have comprised a new superpriority lien absent a new notice of delinquent assessments.") *Golden Hill*, 2017 WL 6597154 at *1 (citing *Property Plus Invs., LLC v. Mortgage Elec. Registration Sys., Inc.*, 401 P.3d 728, 731–32 (Nev. 2017)).

[49] ECF No. 55 at 11. Saticoy Bay cites "exhibit M" as this deposition transcript, but there is no exhibit M. The transcript of Moses's deposition is in the record at ECF No. 66-1.

[50] ECF No. 66-1 at 32.

11

testify that they applied Acosta's payment to "superpriority" or "subpriority" portions of the lien; she said that they applied it to satisfy all assessments through April 2013.[51] As a matter of law and fact based on this record, those were the only charges that could have comprised the superpriority piece of this lien.

On this record, Acosta's payment—which the HOA accepted and applied to all wipe out all assessments due through April 30, 2013—satisfied the full superpriority portion of the HOA's lien. The foreclosure sale on the entire lien thus resulted in a void sale as to the superpriority portion, the "first deed of trust remained after foreclosure," and "the HOA could not convey full title to the property."[52] Wilmington is therefore entitled to summary judgment on the competing quiet-title claims and a declaration that Saticoy Bay purchased the property subject to the deed of trust.[53] Because I grant Wilmington's requested quiet-title relief based on this tender theory, I dismiss its remaining quiet-title theories as moot, deny Saticoy Bay's motion for summary judgment, and deny the HOA's motion for summary judgment and Saticoy Bay's motion to dismiss to the extent that they challenge Wilmington's other quiet-title theories.[54]

---

[51] ECF No. 49-1 at 19.

[52] *Diamond Spur*, 427 P.3d at 121.

[53] ECF Nos. 39, 50. Because I find in favor of Wilmington on the quiet-title claims based on the homeowner's tender, defendants' remaining arguments on these claims are moot. *See, e.g., Diamond Spur*, 427 P.3d at 121 ("A party's status as a BFP is irrelevant when a defect in the foreclosure proceeding renders the sale void."). To the extent that Saticoy Bay argues that the foreclosure sale is presumed valid, that argument fails because Wilmington's tender evidence has demonstrated without genuine dispute that the sale was invalid as to the superpriority portion of the lien. *See Shadow Wood*, 366 P.3d at 1112 (noting that these recitals "did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals").

[54] ECF No. 52.

**C. Saticoy Bay's remaining arguments**

Though the bulk of Saticoy Bay's motion to dismiss challenges Wilmington's quiet-title claims, it also attacks Wilmington's unjust-enrichment claim.[55] Saticoy Bay contends that the unjust-enrichment claim must be dismissed because Wilmington "did not confer any benefit onto defendant," and any payment it did make was voluntary.[56] On a motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint.[57] And here, Wilmington alleged that Saticoy and the HOA "have benefitted from [its] payment of taxes, insurance[,] or homeowner's association assessments since the time of the HOA sale."[58] I infer from this allegation that Wilmington is alleging that it made such payments, and because Saticoy is the owner of the property, Saticoy would naturally have benefitted from those payments. These allegations are sufficient under *Ashcroft v. Iqbal* to survive a motion to dismiss.[59] Whether Wilmington can prove those allegations is a separate question—and one that I need not reach because Saticoy did not raise it in its motion for summary judgment.[60]

Wilmington's unjust-enrichment claim is also not subject to dismissal based on the voluntary-payment doctrine. The doctrine may be raised as an affirmative defense to an unjust-enrichment claim, and "the defendant bears the burden of proving its applicability."[61]

---

[55] ECF No. 35 at 17.

[56] *Id*. at 17–18.

[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[58] ECF No. 31 at 17, ¶ 115.

[59] *Iqbal*, 556 U.S. at 679.

[60] Though Saticoy Bay states in its summary-judgment motion that it "moves for summary judgment and dismissal of plaintiff's amended complaint," *see* ECF No. 52 at 3, it fails to address the unjust-enrichment claim with any argument.

[61] *Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct*., 338 P.3d 1250, 1254 (Nev. 2014).

"Affirmative defenses may not be raised by motion to dismiss" unless "the defense raises no disputed issues of fact."[62] This one raises disputed issues about whether Wilmington made the payments in valid defense of property.[63] So Saticoy Bay has not demonstrated a basis to dismiss this claim. I thus deny the remainder of Saticoy Bay's motion to dismiss.

**D.    The HOA's remaining arguments**

Most of the HOA's arguments in its motions to dismiss and for summary judgment are mooted by the grant of summary judgment in Wilmington's favor on the quiet-title claims. Two remain viable, however: (1) its argument that Wilmington's claims are time-barred,[64] and (2) its argument that Wilmington's claims are barred by laches.[65]

Although Wilmington initiated this suit about two and a half years after the foreclosure sale, it sued only Saticoy Bay.[66] Wilmington did not amend its complaint to add claims against the HOA until just this year—four years and 159 days after the foreclosure sale.[67] 190 days of that delay were spent in mediation with the Nevada Real Estate Division, and under NRS 38.350, the statutes of limitations on such mediated claims were tolled during that process. Subtracting those 190 days, Wilmington's claims against the HOA were effectively filed 3 years and 334 days after they accrued.[68]

---

[62] *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

[63] *See Nevada Ass'n Servs.*, 338 P.3d at 1254 (identifying the exceptions to the doctrine).

[64] ECF Nos. 39 at 9 (HOA MTD), 50 at 10 (HOA MSJ).

[65] ECF Nos. 39 at 10, 50 at 11.

[66] *See* ECF No. 1.

[67] ECF No. 31.

[68] Wilmington does not make a case for its clams against the HOA relating back to the original complaint.

14

The HOA contends that all of Wilmington's claims against it are governed by the three-year statute of limitations in NRS 11.190(3). Wilmington concedes that its negligence and negligence per se claims are untimely and agrees to their dismissal.[69] So I grant the HOA's motion to dismiss Wilmington's seventh and eighth causes of action.

Wilmington's quiet-title claims are not governed by NRS 11.190(3). That statute governs actions "upon a liability created by statute, other than a penalty or forfeiture."[70] Wilmington's quiet-title claims, however titled, are not actions upon a liability created by statute; they are equitable actions to determine adverse interests in real property, as codified in NRS 40.010.[71] Section 40.010 does not create liability, and a party cannot impose liability upon another through that statute. Rather, the statute allows for a proceeding to determine adverse claims to property. Even if I interpret Wilmington's quiet-title claims as claims under NRS 116.3116, it still does not seek to impose liability under that statute. So NRS 11.090(3)(a) does not apply to these claims. Instead, I have found—and maintain—that these equitable quiet-title claims are governed by the four-year statute of limitations in NRS 11.220.[72] Because the non-tolled delay in filing these claims against the HOA was less than four years, I find that they are timely.

Wilmington's remaining claims for unjust enrichment, breach of contract, breach of the covenant of good faith and fair dealing, and misrepresentation do not arise from liability created by statute, so they, too, are not governed by NRS 11.190(3). The deadline to file a

---

[69] ECF No. 43 at 3.

[70] Nev. Rev. Stat. § 11.190(3)(a).

[71] *See supra* at p. 4; *Shadow Wood HOA*, 366 P.3d at 1111 (recounting that "NRS 40.010 essentially codified the court's existing equity jurisprudence" (comma omitted)).

[72] *See Bank of New York Mellon v. 4655 Gracemont Ave. Tr.*, 2019 WL 1598745, at *3–5 (D. Nev. Apr. 12, 2019). I incorporate the statute-of-limitations analysis from *Gracemont* as though set forth fully herein.

15

misrepresentation claim in Nevada is three years,[73] so I dismiss that claim as time-barred. The statute of limitations for unjust-enrichment claims in Nevada is four years,[74] and for the contract claims, six years.[75] Factoring in tolling, those claims were timely filed, so I deny the motion to dismiss them as time-barred.

Finally, the HOA contends that, to the extent that Wilmington's claims are not time-barred by their applicable limitation periods, they are barred by the doctrine of laches. The doctrine is an equitable one that "may be invoked when delay by one party works to the disadvantage of the other, causing a change of circumstances [that] would make the grant of relief to the delaying party inequitable."[76] "The condition of the party asserting laches must become so changed that the party cannot be restored to its former state."[77] "Thus, laches is more than a mere delay in seeking to enforce one's rights; it is a delay that works to the disadvantage of another."[78]

The HOA has not shown that Wilmington's delay has caused a change in the HOA's circumstances that would make relief here inequitable. It contends that, had it known that Wilmington would seek to invalidate the foreclosure sale, "it could have postponed the sale or taken other action to protect its interests and limit its liabilities."[79] But this argument would be

---

[73] Nev. Rev. Stat. § 11.190(3)(d).

[74] *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (citing Nev. Rev. Stat. § 11.190(2)(c)).

[75] Nev. Rev. Stat. § 11.190(1)(b).

[76] *Carson City v. Price*, 934 P.2d 1042, 1043 (Nev. 1997) (quoting *Building & Constr. Trades v. Public Works*, 836 P.2d 633, 636–37 (Nev. 1992)).

[77] *Id.* (quoting *Home Savings v. Bigelow*, 779 P.2d 85, 86 (Nev. 1989)).

[78] *Id.*

[79] ECF Nos. 39 at 10; 50 at 11.

16

true of most litigated disputes, and laches cannot be triggered by the failure to avoid litigation alone. Indeed, the delay that the laches defense "contemplates[] is not delay in bringing claims to the attention of the defendant. It is delay on the part of the plaintiff in instituting litigation on [its] claims."[80] The HOA has not identified any post-foreclosure prejudice that it suffered because of Wilmington's delay, other than having to defend this suit. But "[d]ifficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit[,] do not constitute prejudice within the meaning of the laches doctrine."[81] The HOA has not demonstrated that any of Wilmington's claims are barred by the doctrine of laches.

## Conclusion

The net result of these motions is that Wilmington is entitled to partial summary judgment in its favor on the competing quiet-title claims and a declaration that the deed of trust survived the foreclosure sale, and that Wilmington's claims for negligence, negligence per se, and misrepresentation are dismissed. So, this case proceeds to trial on Wilmington's unjust-enrichment claim against Saticoy Bay and the HOA, and on its claims against the HOA for breach of contract and breach of the implied covenant of good faith and fair dealing. But before that, the parties will be ordered to a settlement conference with the magistrate judge.

IT IS THEREFORE ORDERED that:

- Saticoy Bay LLC Series 206 Valerian's Motion to Dismiss **[ECF No. 35] is DENIED**;
- Cinnamon Ridge Community Association's Motion to Dismiss **[ECF No. 39] is GRANTED in part and DENIED in part.** Wilmington's claims for negligence,

---

[80] *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 953 (9th Cir. 2001) (quoting *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1280 n.6 (9th Cir. 1980)).

[81] *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1033 (9th Cir. 2012) (quoting *Shouse v. Pierce Cnty.*, 559 F.2d 1142, 1147 (9th Cir. 1977)).

17

negligence per se, and misrepresentation are dismissed; the motion is denied in all other respects;

- Wilmington Trust's Motion for Summary Judgment **[ECF No. 49] is GRANTED**. Wilmington Trust is entitled to summary judgment in its favor on its and Saticoy Bay's quiet-title claims and a declaration that the deed of trust survived the foreclosure sale;
- Cinnamon Ridge Community Association's Motion for Summary Judgment **[ECF No. 50] is DENIED**; and
- Saticoy Bay's Motion for Summary Judgment **[ECF No. 52] is DENIED.**

**The parties are ORDERED to a settlement conference with the magistrate judge**, so this case is referred to the magistrate judge to schedule that settlement conference.

Dated: September 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey